UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Jennifer Perkins, | ) | Civil Action No.: 6:14-CV-2577-BHH |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **Opinion and Order** |
| US Airways, Inc.; U.S. Airways Group; | ) | |
| American Airlines Group, successor by | ) | |
| merger with US Airways, Inc.; and US | ) | |
| Airways Health Benefit Plan, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on the defendants' motion to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted. (ECF No. 24.) For the reasons set forth in this order, the defendants' motion is granted in part and denied in part.

## BACKGROUND

By way of her complaint filed June 24, 2014, plaintiff Jennifer Perkins ("plaintiff" or "Perkins") challenges defendants' (US Airways, Inc., U.S. Airways Group, Inc., American Airlines Group, Inc., and US Airways Health Benefit Plan, collectively, "defendants" or "US Airways") denial of her claims for medical benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(3)(A). The plaintiff also contends that US Airways failed to explain the reasons for the denial, in violation of the procedural requirements of ERISA, 29 U.S.C. § 1133(2), and did not provide her with

requested documents, for which she claims the company is subject to a penalty under ERISA, 29 U.S.C. § 1132(c)(1).

According to the complaint, the plaintiff is a participant in the US Airways Health Benefit Plan (the "Plan"). (Compl. ¶¶ 7, 10, ECF No. 1.) The Plan is a welfare benefit plan as defined by ERISA, 29 U.S.C. § 1132(d)(1). (*Id.* ¶ 7.) Defendant US Airways, Inc., was at all relevant times the plan administrator. (*Id.* ¶ 8.)

On May 10, 2000, the plaintiff was struck by lightning while working as a flight attendant for US Airways. (*Id.* ¶¶ 1, 17.) Since that time she has suffered from a variety of medical issues. (*See id.* ¶ 1.) On or about October 2, 2001, US Airways granted the plaintiff an approved medical leave of absence due to her physical inability to perform her duties. (*Id.* ¶¶ 1, 18.) On February 20, 2002, the plaintiff began receiving long-term disability benefits from US Airways, retroactive to October 2, 2001, the day her leave of absence was granted. (*Id.* ¶ 24.) She was continuing to receive those benefits at the time the complaint was filed. (*Id.*) On September 1, 2003, the plaintiff also began receiving Medicare. (*Id.* ¶ 30.) As an employee on a medical leave of absence, the plaintiff remains employed by US Airways (*Id.* ¶ 19-20), and retains her right to return to active employment (*Id.* ¶¶ 21-22).

In 2011, the Plan denied the plaintiff coverage for benefit claims totaling $10,848 on the ground that Medicare, rather than the Plan, was the primary provider for those claims. (*Id.* ¶¶ 41, 43.) The plaintiff appealed that denial on July 26, 2011, and again on December 15, 2011. (*Id.* ¶ 42.) On August 23, 2012, US Airways denied the plaintiff's second, final appeal via a "Notice of Final Internal Adverse Benefit Determination." (*Id.* ¶ 43.)

2

The first relevant version of the US Airways Health Benefit Plan has an effective date of January 1, 1992 ("1992 Plan"). (Mot. to Dismiss, Ex. B, ECF No. 24-4 at 26.) Section 4.5, entitled "Coordination With Medicare," states in pertinent part:

> When a Participant is eligible for Medicare, this Plan will pay first for:
>
> > (a) an *active* Employee who is age 65 or over;
> > (b) an *active* Employee's spouse Dependent age 65 and over;
> > (c) an *active* Employee's disabled Dependent under age 65; or
> > (d) the first 12 consecutive months of treatment for end stage renal disease received by any Participant.
>
> *If these rules do not apply, this Plan will pay benefits only after Medicare has paid its benefits*; provided, however, that the Plan will only pay benefits before or after Medicare has paid benefits, as applicable, if the Participant has enrolled for Medicare Parts A and B.

(Ex. B, ECF No. 24-4 at 17) (emphasis added). Section 4.5 of the 1992 Plan was amended with an effective date of January 1, 2003 ("2003 Amendment"). (Ex. B, ECF No. 24-4 at 55.) As amended, section 4.5 reads in pertinent part:

> When a Participant or his Dependent is eligible for Medicare, this Plan will pay first for:
>
> > (a) an *active* Employee who is age 65 or over;
> > (b) an *active* Employee's Dependent age 65 and over;
> > (c) an *active* Employee's disabled Dependent under age 65; or
> > (d) the first 30-month period of treatment for end stage renal disease received by any Participant, beginning with the first month in which the Participant becomes entitled to Medicare or, if earlier, the first month that the Participant would have been entitled to Medicare had an application been filed for such benefits.
>
> *If the above rules do not apply, this Plan will pay benefits only after Medicare has paid its benefits*; provided, however, that the Plan will only pay benefits before or after Medicare has paid benefits, as applicable, if the Participant and Dependent spouse have enrolled for Medicare Parts A and B. If a Participant's Dependent spouse becomes eligible for Medicare prior to the Participant, this Plan will pay benefits for the Dependent spouse after Medicare has paid its benefits, provided the Dependent spouse has enrolled for Medicare Parts A and B.

3

(Ex. B, ECF No. 24-4 at 51) (emphasis added).

The relevant Summary Plan Description of the US Airways Health Benefit Plan has an effective date of January 1, 1993 ("1993 SPD"). (Mot. to Dismiss, Ex. D, ECF No. 25-1 at 7.) The section entitled "Effect of Medicare on the Plan" states in pertinent part:

> The USAir, Inc. Health Benefit Plan *pays after Medicare* for:
>
> • Retired Employees and their Dependents eligible for Medicare.
> • *Covered persons eligible for Medicare due to disability if either of the following apply:*
>   • *The covered person is not an "active individual" as defined by federal law and determined by your employer.*
>   • This Plan is not a "large group health plan" as defined by federal law and determined by your employer.
> • Covered persons eligible for Medicare due to end stage renal disease, but only after the first 18 months of entitlement to Medicare benefits due to end stage renal disease.

(Ex. D, ECF No. 25-1 at 122) (emphasis added). The relevant Summary of Material Modifications has an effective date of January 1, 2011 ("2011 SMM"). (Mot. to Dismiss, Ex. C, ECF No. 24-5 at 2.) In pertinent part, the section entitled "Coordination with Medicare for Disabled Individuals" states:

> If you or your covered dependent(s) are enrolled in Medicare while you are actively employed, participation in this Plan will continue as long as you are an active employee and remain enrolled. This Plan will be the primary carrier and Medicare will be the secondary carrier.
>
> *If you are on a leave of absence or you are receiving disability benefits, please note the following important rules regarding coverage under Medicare:*
>
> <u>Leave of Absence</u>: If you take a leave of absence and retain coverage under the Plan, the Plan will continue to pay primary for as long as you retain your right to return to active employment, i.e., your employment is not terminated by the company. If your employment is terminated by the company, Medicare will become primary.

4

> *Disability: If you take a medical leave of absence, retain coverage under the Plan, and start receiving disability benefits from the company, the Plan will continue to pay primary for the first 6 months of your disability coverage, i.e., while disability benefits are subject to FICA tax. After this 6 month period, Medicare will become primary for you and/or any covered dependents.*
>
> When Medicare becomes primary, the Plan assumes you are enrolled in both Medicare Part A and B, so review your options when you become eligible for Medicare (either due to age or disability).
>
> If you have questions about Medicare benefits, contact your local Social Security office.

(Ex. C, ECF No. 24-5 at 8) (emphasis added).

The current version of the US Airways Health Benefit Plan has an effective date of January 1, 2013 ("2013 Plan"). (Mot. to Dismiss, Ex. A, ECF No. 24-3 at 2.) Section 4.5, entitled "Coordination with Medicare," states in pertinent part:

> *If an Employee is on a leave of absence or receiving disability benefits, the following rules regarding coverage under Medicare apply:*
>
> (a) Leave of Absence: If an Employee takes a leave of absence and retains coverage under the Plan, the Plan will continue to pay primary for as long as the active Employee retains the right to return to active employment, (i.e., the active Employee's employment is not terminated by the Company). If the active Employee's employment is terminated by the company, Medicare will become primary.
>
> *(b) Disability: If an Employee takes a medical leave of absence, retains coverage under the Plan, and starts receiving disability benefits from the Company, even if he or she is still on leave of absence and retains his or her right to return to active employment, the Plan will continue to pay primary for the first 6 months of disability coverage, (i.e., while disability benefits are subject to FICA tax). After this 6 month period, Medicare will become primary.*

(Ex. A, ECF No. 24-3 at 17) (emphasis added).

The defendants filed a motion to dismiss the plaintiff's complaint for failure to state a claim on September 18, 2014. (ECF No. 24.) The plaintiff filed a response in

opposition to the motion (ECF No. 28) on October 16, 2014, and the defendants filed their reply on October 27, 2014 (ECF No. 29).

## STANDARD OF REVIEW

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556)). In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

As previously noted, to survive a Rule 12(b)(6) motion to dismiss a complaint must state "a *plausible* claim for relief." *Iqbal*, 556 U.S. at 679 (emphasis added). "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

Generally, "[when] resolving a motion pursuant to Rule 12(b)(6) . . . , a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). However, "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the [c]ourt may consider the same without converting the motion to one for summary judgment." *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995), *aff'd*, 103 F.3d 351 (4th Cir. 1996) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil*, § 1327, at 762-63 (2d ed. 1990)); *accord Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (the court may properly

consider documents "attached to the complaint . . . as well those attached to the motion to dismiss, so long as they are integral to the complaint and authentic"). Indeed, "to pursue any other tack would risk permitting 'a plaintiff with a legally deficient claim [to] survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.'" *Gasner*, 162 F.R.D. at 282 (quoting *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document).

## DISCUSSION

### I. First Cause of Action

In the plaintiff's first cause of action, she alleges by way of 29 U.S.C. § 1132(a)(1)(B) that US Airways unreasonably denied her health benefits under the Plan by refusing to act as the primary payer on her medical claims. (Compl. ¶¶ 52-59, ECF No. 1.) The Court finds that this cause of action fails to state a claim because, under the express terms of the Plan, Medicare, and not US Airways, was the primary payer on the plaintiff's medical claims.

The complaint alleges that the 2011 SMM "governed" the plaintiff's health care coverage under the Plan. (Compl. ¶ 32, ECF No. 1.) The plaintiff quotes the "Leave of Absence" provision under the "Coordination With Medicare for Disabled Individuals" section for the proposition that the Plan was primary as applied to her:

> Leave of Absence: If you take a leave of absence and retain coverage under the Plan, the Plan will continue to pay primary for as long as you retain your right to return to active employment, i.e., your employment is not terminated by the company. If your employment is terminated by the company, Medicare will become primary.

*Id.* Inexplicably, the plaintiff fails to reference the very next sentence of the 2011 SMM, which, by the terms of her own pleading, is the provision that actually applied to her:

> <u>Disability</u>: If you take a medical leave of absence, retain coverage under the Plan, and start receiving disability benefits from the company, the Plan will continue to pay primary for the first 6 months of your disability coverage, i.e., while disability benefits are subject to FICA tax. *After this 6 month period, Medicare will become primary for you and/or any covered dependents.*

(Ex. C, ECF No. 24-5 at 8) (emphasis added). The plaintiff alleges that she has been on a medical leave of absence since October 2, 2001, and that she began receiving long-term disability benefits from US Airways on February 20, 2002, retroactive to the date her medical leave of absence began. (Compl. ¶¶ 1, 18, 24, ECF No. 1.)

The Court is at a loss to understand why the plaintiff selectively excluded the "Disability" provision from the complaint. The "Disability" provision, and not the "Leave of Absence" provision, indisputably applies to the plaintiff's circumstance because she was on a *medical* leave of absence.[1] The time frame the plaintiff alleges US Airways improperly refused to act as the primary payer, year 2011 (*see id.* ¶¶ 37-41), is well beyond six months after she began receiving long-term disability benefits, February 20, 2002 (*see id.* ¶ 24). As such, the express language of the 2011 SMM indicates that Medicare was the primary payer.

If plaintiff's *medical* leave of absence fell under the "Leave of Absence" provision as the plaintiff avers, the "Disability" provision would be rendered utterly superfluous. The Court is not permitted to read ERISA plans in such a manner. The United States Court of Appeals for the Fourth Circuit has held:

---

[1] The plaintiff does not contest this point in her response in opposition to the motion to dismiss. (ECF No. 28)

ERISA plans, like contracts, are to be construed as a whole. Courts must look at the ERISA plan as a whole and determine the provision's meaning in the context of the entire agreement. And, because contracts are construed as a whole, courts should seek to give effect to every provision in an ERISA plan, avoiding any interpretation that renders a particular provision superfluous or meaningless.

*Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 820 (4th Cir. 2013). Put simply, it is impossible to construe the well-pled facts in a manner that the 2011 SMM grounds a plausible claim for relief.

The plaintiff also cites language from the 1993 SPD as supportive of her claim that the Plan should be the primary payer. (Compl. ¶ 33, ECF No. 1). Her complaint reads: "The January 1993 version of the Health Plan states, '[I]f your employer is subject to the Medicare Secondary Payer requirements of federal law, this Plan will pay primary.'" *Id.* (quoting Ex. D, ECF No. 25-1 at 122).[2] Again, the plaintiff has taken language out of context and inexplicably ignored the immediately following provision from the 1993 SPD, which clarifies that the Plan is secondary to Medicare in her situation. It reads: "The USAir, Inc. Health Benefit Plan *pays after Medicare* for . . . [c]overed persons eligible for Medicare due to disability if . . . [t]he covered person is not an 'active individual' as defined by federal law and determined by your employer." (Ex. D, ECF No. 25-1 at 122) (emphasis added). As with the 2011 SMM, the express language of the 1993 SPD dictates that, even construing all of the well-pled facts and reasonable inferences in the plaintiff's favor, the Plan is secondary to Medicare.

In her response in opposition to the motion to dismiss, the plaintiff argues that the phrase "active individual" in the 1993 SPD is ambiguous and that the Court should

---

[2] As a point of clarification, the "January 1993 version of the Health Plan" that the plaintiff is referencing is not the Plan itself, but a Summary Plan Description. The importance of this point will be addressed more fully in the analysis below.

consider evidence extrinsic to the complaint in order to determine the meaning of that language. (Pl.'s Resp. in Opp. to Mot. to Dismiss, ECF No. 28 at 4-5.) The plaintiff asserts that "active individual" is not defined in the 1993 SPD and that there is no indication of what federal law controls the definition. *Id.* at 4. If the Court were required to consider such extrinsic evidence, it would, of course, preclude resolution of this claim on a motion to dismiss. However, for the reasons set forth below the Court need not do so, and the plaintiff's arguments are unavailing.

The United States Supreme Court has held that ERISA plan summary documents, such as the 1993 SPD, "important as they are, provide communication with beneficiaries *about* the plan, but . . . do not themselves constitute the *terms* of the plan for purposes of [29 U.S.C. § 1132(a)(1)(B)]." *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (emphasis in original). As previously stated, the Court may properly consider documents attached to the motion to dismiss so long as they are "integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Any ambiguity in the phrase "active individual" is rendered irrelevant once one looks at the terms of the Plan itself, which is attached to the motion to dismiss, and the authenticity of which is undisputed.[3]

_____

[3] The Court is skeptical of the plaintiff's assertions of ambiguity in the first instance. First, in a section entitled "Changes in Coverage for Inactive Employees" the 1993 SPD provides the following definition: "An Employee will be considered to be an 'Inactive Employee' if such Employee is on a leave of absence which takes him or her to inactive status." (Ex. D, ECF No. 25-1 at 15.) Second, by the terms of the plaintiff's own complaint, she has described her status in contradistinction to that of an "active" employee of US Airways. The complaint avers that she has been on an approved medical leave of absence from US Airways since October 2001, that she has current employment status at US Airways, that US Airways has not terminated her employment, and that she *retains her right to return to active employment* at US Airways and/or its successor, American Airlines. (Compl. ¶¶ 18-22, ECF No. 1.) It stands to reason that an individual cannot both retain the ability to *return* to active status, and *be* in an active status at the same time. Third, and more importantly, the phrase "active individual" does not appear in the Plan itself, or even the 2011 SMM on which the plaintiff predominantly relies. As such, any

The first relevant iteration of the Plan is the 1992 Plan, which became effective on January 1st of that year. (Ex. B, ECF No. 24-4 at 26.) Section 4.5 clearly explains that, except where the employee in question is still "active," or during the first 12 consecutive months of treatment for end stage renal disease, when a participant is also eligible for Medicare, the "Plan will pay benefits only after Medicare has paid its benefits." *Id.* at 17. Section 3.1 defines inactive status as follows: "An 'inactive' Employee is an Employee who is on a leave from employment with his Employer." *Id.* at 12. The end result is that the plaintiff is indisputably both "inactive" and otherwise "eligible for Medicare." Thus, the express terms of the 1992 Plan unambiguously place the plaintiff in a category of Plan participants for whom Medicare is the primary payer. The 1992 Plan predates the 1993 SPD, and its terms control. *See Amara*, 131 S. Ct. at 1878. The 2003 Amendment to Section 4.5, effective January 1st of that year, made only immaterial alterations and dictates the same result. (*See* Ex. B, ECF No. 24-4 at 51, 55.) Finally, the 2013 Plan incorporates the "Disability" provision from the 2011 SMM with only immaterial alterations. (*See* Ex. A, ECF No. 24-3 at 17.) Thus, the express terms of the 2013 Plan also unambiguously instruct that Medicare becomes the primary payer six months after an employee takes a medical leave of absence, retains coverage under the Plan, and starts receiving disability benefits from the company. *See id.*

In her response in opposition to the motion to dismiss, the plaintiff does not contest the defendants' assertion that her claim to benefits is governed by the "Disability" provision from the "Coordination with Medicare" section of the Plan. (*See* Ex.

ambiguity in this phrase is inapposite to the resolution of the motion to dismiss because the terms of the SPD "do not themselves constitute the terms of the plan." *Amara*, 131 S. Ct. at 1878.

C, ECF No. 24-5 at 8 (2011 SMM); Ex. A, ECF No. 24-3 at 17 (2013 Plan).) Perhaps seeing the writing on the wall for her first cause of action, the plaintiff converts her claim regarding the alleged improper denial of benefits under 29 U.S.C. § 1132(a)(1)(B) to a request for equitable relief under § 1132(a)(3).[4] (Pl.'s Resp. in Opp. to Mot. to Dismiss, ECF No. 28 at 5-7.) The plaintiff argues that even if the defendants' interpretation of the Plan is correct, and the Plan was not the primary payer on the claims she alleges were improperly denied, that she is entitled to benefits pursuant to principles of waiver and estoppel because the Plan has paid her claims as primary in the past, and she has come to rely on the "representations by [US Airways] that they would be her primary insurer." *Id.* at 7. In support of this claim, the plaintiff relies exclusively on the United States Supreme Court's decision in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), which she states has "implicitly overrul[ed]" Fourth Circuit case law that forecloses the use of principles of waiver and estoppel to modify the express terms of an ERISA Plan. (Pl.'s Resp. in Opp. to Mot. to Dismiss, ECF No. 28 at 5.) The Court disagrees.

In *Amara*, the United States Supreme Court expanded the equitable remedies available to a plaintiff suing fiduciaries under 29 U.S.C. § 1132(a)(3). The ERISA plan participants in that case filed a class action against an employer and pension plan, claiming that the employer's conversion of a traditional defined benefit plan to a cash balance retirement plan provided them with less generous benefits. *Amara*, 131 S. Ct. at 1870-72. The district court in *Amara* found that the plaintiffs' cause of action was authorized by § 1132(a)(1)(B), the "recovery-of-benefits-due-provision" in which the plaintiff in the instant action grounded her allegation of improper denial of benefits. *See*

---

[4] It should be noted that the plaintiff does not raise this claim as a basis for relief in her complaint. Nevertheless, the Court will address her arguments in an abundance of caution, prior to dismissing the first cause of action.

*id.* at 1871. Pursuant to § 1132(a)(1)(B), the district court in *Amara* altered the terms of the new pension plan adopted by the defendant, CIGNA Corporation, because it found that misrepresentations in the plan's summary documents had caused the employees "likely harm." *See id.* The district court considered the issue of whether relief was appropriate under § 1132(a)(3), but declined to rule on the issue in part because it had already found that relief should be granted under § 1132(a)(1)(B). The Second Circuit affirmed the decision, but the Supreme Court reversed, finding that although § 1132(a)(1)(B) authorized the district court to order a party to pay benefits due under a plan, it did not authorize the court to first change the terms of the plan and then order payment. *See id.* at 1876-77 ("The statutory language [of § 1132(a)(1)(B)] speaks of 'enforc[ing]' the 'terms of the plan,' not of changing them.") The Court held that such relief, which it characterized as "reformation of the terms of the plan" and a "remedy [that] resembles estoppel," was equitable in nature and thus could only be granted pursuant to § 1132(a)(3). *See id.* at 1879-80. Significantly, the Court reasoned that the reformation of the terms of the plan was appropriate "in order to remedy the *false or misleading information* [the employer] provided" to its employees in summary plan documents. *See id.* at 1879 (emphasis added).

Although *Amara* expanded the availability of equitable remedies such as estoppel under § 1132(a)(3), it did so in the context of a suit involving material misrepresentations in the summary plan documents and breach of trust by the plan fiduciary. *See id.* 1879-80. Those issues are simply not raised in the instant case. There is no allegation of misrepresentation or breach of a fiduciary duty. In the absence of that context, "it is well settled in [the Fourth Circuit] that principles of waiver and estoppel

cannot be used to modify the express terms of an ERISA plan." *Band v. Paul Revere Life Ins. Co.*, 14 F. App'x 210, 213 (4th Cir. 2001) (citing *Bakery v. Confectionary Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027 (4th Cir. 1997); *White v. Provident Life & Acc. Ins. Co.*, 114 F.3d 26, 29 (4th Cir. 1997); *HealthSouth Rehabilitation Hosp. v. American Nat. Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996); *Mullins v. Blue Cross and Blue Shield of Va., Inc.*, 79 F.3d 380, 381 (4th Cir. 1996); *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir. 1992).

In *Band*, a representative for an insurance company incorrectly recorded the plaintiff's age on the company's application for disability insurance. *Id.* at 211. As a result, the insurance company committed itself to pay 48 months of disability benefits to the plaintiff, rather than 42 months, which was the longest period permitted by the express terms of the plan for someone of the plaintiff's true age. *Id.* When the insurance company discovered its mistake and the plaintiff's correct age, it refused to pay the additional six months of benefits. The plaintiff brought suit alleging that the doctrines of waiver and promissory estoppel prohibited the insurance company from refusing to pay the remaining six months of benefits because the insurance company had responded by letter to an inquiry from the plaintiff stating that the benefits would continue for the full 48 months. *Id.* at 212. The district court granted summary judgment for the plaintiff on the waiver and estoppel claims, and the insurance company appealed. The Fourth Circuit reversed, holding that the doctrines of waiver and estoppel could not supersede the express, unambiguous language of the benefit plan. *Id.* at 213. "'ERISA demands adherence to the clear language of the employee benefit plan.'" *Id.* at 212 (quoting *White v. Provident Life Accident Ins. Co.*, 114 F.3d 26, 28 (4th Cir. 1997)). "The express

terms of the Plan must be followed." *Id.* (citing *HealthSouth Rehabilitation Hosp.*, 101 F.3d at 1009-10 (4th Cir. 1996)).

The holding in *Amara* does not disturb these core principles, and the Court declines to read *Amara* as broadly as the plaintiff encourages. The plaintiff's reading of *Amara* purports to convey a broad new power to reform ERISA plans upon the lower courts. Were such a reading adopted, *Amara* would permit carte blanche challenges to every denial of ERISA plan benefits under § 1132(a)(3), the express, unambiguous language of the plan notwithstanding. Again, the Court will not read *Amara* in a manner that eviscerates a huge swath of federal common law surrounding ERISA. On the contrary, *Amara* and *Band* can be read consistently as two sides of the same coin – *Amara* permits equitable relief where a plaintiff cannot recover under § 1132(a)(1)(B), *but has otherwise been wronged by an ERISA plan*; *Band* preserves the integrity of the express terms of ERISA plans *where no other such wrong exists. See also*, *Amara*, 563 U.S. at 1881 ("To be sure, just as a court of equity would not surcharge a trustee for a nonexistent harm, a fiduciary can be surcharged under [§ 1132(a)(3)] only upon a showing of actual harm . . . ." (internal citation omitted)).

The plaintiff's waiver and estoppel arguments seek to capitalize on the fact that the Plan errantly paid the plaintiff's medical claims for some time as though the Plan, not Medicare, were the primary payer. As the Court has set forth above, the Plan did so in contravention of its own express terms, to its own financial detriment, but to the plaintiff's benefit. How or why the Plan administrator mistakenly permitted the Plan to continue to pay as primary is of no import to the resolution of the motion to dismiss, and is outside the Court's purview at this stage of the litigation. It is enough to simply note,

that the change from primary to secondary payer on the part of the Plan was a change from non-compliance to compliance with its own terms, and involved no misrepresentation on the part of the Plan or US Airways. Put simply, the plaintiff has not made a plausible showing that she was harmed in any way by the Plan mistakenly acting as primary payer.

The Rule 12(b)(6) standard requires the Court to accept all well-pled allegations in the plaintiff's complaint as true and draw all reasonable factual inferences therefrom in favor of the plaintiff. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). But the standard certainly does not counsel turning a blind eye to the express language of the Plan or engaging in a selective reading of the applicable text. Having construed all relevant facts and all reasonable inferences in the plaintiff's favor, the Court still finds that the plaintiff has not set forth sufficient factual matter regarding US Airways' refusal to act as primary payer to state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678. As such, the Court grants the defendants' motion to dismiss the first cause of action with prejudice.

**II. Second Cause of Action**

In the plaintiff's second cause of action, she alleges by way of 29 U.S.C. § 1133 that US Airways violated ERISA's procedural requirements by failing to provide her with a full and fair review of the specific reasons why her claims were denied, written in a manner calculated for her understanding. (Compl. ¶¶ 61-64, ECF No. 1.) The plaintiff further claims that US Airways failed to afford her a reasonable opportunity for a full and fair review of the decision denying the claims as required by ERISA. (*Id.* ¶ 62.) Finally, she alleges she "has had to expend a substantial amount of time and resources to

secure her rightful benefits" because of US Airways "improper claims procedure." (*Id.* ¶ 63.) By way of relief, the plaintiff requests that the Court "redress the ERISA violations outlined herein above, [] enforce the provisions of ERISA and the terms of the Plan, and [provide] such other and further appropriate equitable relief as this Court deems just and proper." (*Id.* ¶ 64). The Court finds that this cause of action fails to state a claim because the plaintiff has failed to set forth sufficient facts to substantiate a plausible claim for relief.

The Court must note at the very outset, that the plaintiff's complaint is woefully deficient in explaining, with any level of specificity, how US Airways allegedly violated the procedural requirements of 29 U.S.C. § 1133. In this regard, the Court believes that the second cause of action amounts to little more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" which falls short of the pleading standard in Fed.R.Civ.P. 8(a)(2). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In light of this deficiency, the Court could simply dismiss the second cause of action without any further analysis. Nevertheless, in an abundance of caution, the Court will consider the applicable law and relevant, undisputed facts, which it is forced to glean from the motion to dismiss.

ERISA directs that "every employee benefit plan shall":

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

18

29 U.S.C. § 1133. "ERISA empowers the Secretary of Labor to 'prescribe such regulations as he finds necessary or appropriate to carry out' the statutory provisions securing employee benefit rights." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003) (quoting 29 U.S.C. § 1135); *see* 29 U.S.C. § 1133 (plans shall process claims "[i]n accordance with regulations of the Secretary"). The Secretary of Labor's regulations specify that the written notice required by 29 U.S.C. § 1133(1) must set forth, "in a manner calculated to be understood by the claimant":

> (i) The specific reason or reasons for the adverse determination;
> (ii) Reference to the specific plan provisions on which the determination is based;
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review . . . .

29 C.F.R. § 2560.503-1(g)(1). The regulations also direct that a "'full and fair review' includes the opportunity for the claimant to appeal the adverse benefits determination and to submit written comments or records." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 235 (4th Cir. 2008); *see* 29 C.F.R. § 2560.503-1(h)(2). "These requirements are designed both to allow the claimant to address the determinative issues on appeal and to ensure meaningful review of the denial." *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 (7th Cir. 2009) (citing *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992)).

The plaintiff states the following facts in her complaint: (a) the defendants "unilaterally ceased paying as the primary provider" in 2011 (Compl. ¶ 37, ECF No. 1), (b) neither the defendants nor Medicare have paid her 2011 health care claims (*Id.* ¶

40), (c) she timely appealed the defendants' denial of her 2011 health benefits on July 26, 2011 and December 15, 2011 (*Id.* ¶ 42), (d) the defendants denied her 2011 health care claims on August 23, 2012 via a "Notice of Final Internal Adverse Benefit Determination" (*Id.* ¶ 43), and (e) by letter dated February 11, 2011, US Airways provided some but not all of the documents she requested related to the Plan (*Id.* ¶ 69).

The complaint was utterly non-specific regarding any putative deficiencies in the notification and review process regarding US Airways' refusal to act as primary payer on the plaintiff's 2011 medical claims. As such, the Court has attempted to cobble together all facts from the complaint that even peripherally referenced matters related to these procedures. Even after doing so, it is entirely unclear to the Court what deficiencies the plaintiff is alleging.

The Court will first dispose of those portions of the plaintiff's second claim that are most lacking in substance. The plaintiff claims that US Airways failed to afford her a reasonable opportunity for a full and fair review of the decision denying her 2011 claims—but this assertion is flatly refuted by the terms of her own pleading, which states that she timely appealed the denial of benefits twice before receiving a final adverse benefits determination. *See Gagliano*, 547 F.3d at 235. Plaintiff does not explain *how* she was denied a full and fair review, and she fails to state a claim in this regard. Additionally, the plaintiff points to the fact that she has had to expend her own time and resources in pursuit of her benefits because of US Airways' "improper claims procedure." Even applying the most generous interpretive principles, the Court cannot discern any actionable injury alleged by the plaintiff and concludes that the plaintiff has failed to state a claim.

The plaintiff further claims that she was not provided a full and fair review of the *specific reasons* why her claims were denied. She incidentally references a letter from US Airways dated February 11, 2011, but only to note that not all of the documents she requested from the Plan were provided. She did not attach the February 11, 2011 letter to her complaint. Upon review of the February 11, 2011 letter, the Court finds that the Vice President of Human Resources at US Airways explained exactly why the plaintiff's claims were denied in painstaking detail over the course of five pages.[5] (*See* Mot. to Dismiss, Ex. E, ECF No. 25-2). The plaintiff also references a "Notice of Final Internal Adverse Benefit Determination" sent to her on August 23, 2012 after she timely appealed the denial of her 2011 health benefits twice. She did not attach the August 23, 2012 notice to the complaint. Upon review of the August 23, 2012 notice, the Court finds that a Clinical Appeals Analyst at US Airways again explained in specific terms why the plaintiff's claims were being denied. (*See* Mot. to Dismiss, Ex. F, ECF No. 25-3 at 19). In her response in opposition to the motion to dismiss, the plaintiff does not describe any deficiencies in these notices or procedures, rather she vacuously states that she has "presented questions of disputed facts" pertaining to her second cause of action and that the Court "must accept said allegations as true." (Pl.'s Resp. in Opp. to Mot. to Dismiss, ECF No. 28 at 7.) The Court is not convinced. The plaintiff simply has not set forth sufficient facts to state a plausible claim to relief on the grounds that US Airways' notifications and procedures denying her 2011 health benefits claims were deficient under 29 U.S.C. § 1133 or the applicable regulations. As such, the Court grants the defendants' motion to dismiss the second cause of action.

---

[5] As set forth above, the Court will consider documents attached to the motion to dismiss that are integral to the plaintiff's complaint and the authenticity of which is undisputed. These prerequisites are satisfied for Exhibits E and F to the motion (ECF Nos. 25-2, 25-3).

### III. Third Cause of Action

In the plaintiff's third cause of action, she alleges that as the Plan administrator, US Airways violated ERISA, 29 U.S.C. § 1132(c), by failing to provide her with the Plan documents she requested in a time period that complied with the statute. (Compl. ¶¶ 66-73, ECF No. 1.) Therefore, she asserts, she is entitled to money damages for every day of non-compliance. (*Id.* ¶ 72.)

ERISA provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B). The complaint alleges that the plaintiff requested documents related to the Plan on September 30, 2011 by way of a letter to US Airways. (Compl. ¶ 66, ECF No. 1). The plaintiff attached this letter to the complaint as exhibit 1. (*Id.*) She further avers that US Airways acknowledged her request by way of a responsive letter dated December 2, 2011, but did not provide the requested plan documents. (*Id.* ¶ 67). She attached US Airways' December 2, 2011 to the complaint as exhibit 2. (*Id.*) It reads in relevant part:

> With respect to your document request, we have already provided all relevant plan documents, summary plan descriptions and collective bargaining agreements that govern the terms of your medical coverage (please see our discussion of this topic in the last section of our February 11, 2011 letter). The only outstanding item appears to be your request for the "administrative record" and claims procedures. To the extent that such

22

information exists, BCBSNC, the Claims Administrator, can provide that information to you directly if you contact them at the following address. . . .

(Compl., Ex. 2, ECF No. 1-2 at 2.)

The plaintiff next alleges that she submitted another letter on December 13, 2011, requesting the plan documents again. (Compl. ¶ 68, ECF No. 1.) She attached this second request letter to the complaint as exhibit 3. (*Id.*) In the December 13, 2011 request, the plaintiff indicates specific documents and portions of documents that she believes she has not been provided; she also indicates that the relevant plan documents provided by US Airways on February 11, 2011 to her attorney, were incomplete, and that pursuant to ERISA she believes she has a right to be provided with her own copy. (Compl., Ex. 3, ECF No. 1-3 at 2-3.) The plaintiff further alleges that she, through new counsel, requested the plan documents a third time by way of a letter dated January 25, 2012. (Compl. ¶ 70, ECF No. 1.) She attached this third request letter to the complaint as exhibit 4. (*Id.*) In the January 25, 2012 request, the plaintiff's new counsel explains that the portion of the plan documents she and her client believe to have been missing when they were provided to the previous attorney includes the pages that address the Plan's coordination with Medicare on the primary and secondary payer issue. (Compl., Ex. 4, ECF No. 1-4 at 2.)

The plaintiff states that she ultimately received the missing portion of the plan documents on February 14, 2012, but only after much delay. (Compl. ¶ 71, ECF No. 1.) She attaches a US Airways letter dated January 31, 2012, which purports to deliver the requested plan documents, as exhibit 5. (*Id.*) The Court finds that the plaintiff has set forth sufficient factual matter, when accepted as true, to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The well-pled

23

facts allow the Court to draw the reasonable inference that the defendants are liable for the misconduct alleged. *See id.*

In the motion to dismiss, the defendants argue that US Airways complied with the plaintiff's request for plan documents in a timely fashion. (Mot. to Dismiss, ECF No. 24-1 at 25.) They assert that their delivery of documents to the plaintiff's previous counsel, referenced in the February 11, 2011 letter attached to their motion, was satisfactory and that there was no violation of 29 U.S.C. § 1132(c). (*See id.* at 25-27.) The Court finds that the defendants' arguments on this issue address the merits of the plaintiff's claim, not any supposed deficiency in her pleading. Fed.R.Civ.P. 12(b)(6) does not permit the Court to resolve factual disputes by way of a motion to dismiss. "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010). Because there are outstanding questions of disputed fact, and the Court must accept the plaintiff's well-pled facts as true, the defendants' motion to dismiss the third cause of action is denied.

## IV. Fourth Cause of Action

The plaintiff's fourth cause of action rehashes her allegation that US Airways broke the law, this time the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395y, by failing to provide primary payment for the plaintiff's 2011 medical claims. (Compl. ¶¶ 75-79, ECF No. 1.) Because, the plaintiff argues, US Airways had the responsibility to pay for her medical claims in 2011 as primary, and failed to do so, she is entitled to double damages under 42 U.S.C. § 1395y(b)(3)(A). (*Id.*) This cause of

action fails to state a claim for the same reasons already explained with respect to the first cause of action—the Plan was not the primary payer for the plaintiff's claims.

With respect to disabled individuals in large group health plans, the MSPA states, "In general [a] large group health plan. . . may not take into account that an individual. . . who is covered under the plan by virtue of the individual's *current employment status* with an employer is entitled to benefits under [the Medicare program]." 42 U.S.C. § 1395y(b)(1)(B)(i) (emphasis added). In other words, a plan must pay primary for any covered individual with "current employment status." *See* 42 C.F.R. § 411.102(c). The regulations promulgated to implement the MSPA explain that "[a]n individual has current employment status if . . . [t]he individual is actively working as an employee . . . or . . . [t]he individual is *not actively working* and . . . [i]s receiving disability benefits from an employer *for up to 6 months* . . . ." 42 C.F.R. § 411.104 (emphasis added). The obvious inference is that an individual's "current employment status" for purposes of the MSPA does not extend beyond six months of receiving disability benefits from her employer while she is not actively working. *See id.* After that six month period, the general prohibition on a plan taking into account that the individual is entitled to Medicare benefits no longer applies. *See* 42 U.S.C. § 1395y(b)(1)(B)(i). The United States Court of Appeals for the Eleventh Circuit has explained it this way:

> [T]he [MSPA] statute prohibits private insurers providing coverage as a result of an individual's *current* employment status from making Medicare primary to its coverage for that individual or that individual's spouse . . . . The MSP statute contains no similar provision with respect to private insurance plans covering such individuals for reasons *other* than current employment status. Thus, private plans covering such individuals for reasons other than current employment status of that individual . . . *may* make their coverage secondary to Medicare when those individuals are simultaneously eligible for Medicare.

*Harris Corp. v. Humana Health Ins. Co. of Fla., Inc.*, 253 F.3d 598, 601 (11th Cir. 2001) (emphasis in original). As set forth extensively above, this transfer of primary payer responsibility from US Airways to Medicare is exactly what the express terms of the Plan provide now and historically have provided. As such, the plaintiff's fourth cause of action fails to state a claim and is hereby dismissed.[6]

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED in part and DENIED in part. For those portions of the complaint for which dismissal is GRANTED, such dismissal is with respect to all defendants and is with prejudice.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

September 30, 2015
Greenville, South Carolina

---

[6] In her response in opposition to the motion to dismiss, the plaintiff makes cursory arguments for why, in her view, the MSPA still requires the Plan to pay as primary. As with her ERISA claim, she invokes alleged ambiguity in the language of the Plan and equitable principles to support the notion that US Airways was the primary insurer. For the reasons explained in the analysis of the first cause of action, the Court finds these arguments unpersuasive. The plaintiff also makes brief policy arguments for why the Court should find that her complaint states a claim under the MSPA: "The purposes [sic] [MSPA] include protecting the Federal Government from cost shifting tactics by private businesses. In this instance, [US Airways] is responsible for [the plaintiff's] care, but instead wishes to put the burden of an employee's healthcare costs on United States citizens instead. It is just this sort of abuse that the [MSPA] was enacted to discourage." (Pl.'s Resp. in Opp. to Mot. to Dismiss, ECF No. 28 at 8.) The Court finds these arguments similarly inapposite and unavailing.