UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Jennifer Perkins, | ) | Civil Action No.: 6:14-CV-2577-BHH |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **Opinion and Order** |
| US Airways, Inc.; U.S. Airways Group; | ) | |
| American Airlines Group, successor by | ) | |
| merger with US Airways, Inc.; and US | ) | |
| Airways Health Benefit Plan, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendants US Airways, Inc., U.S. Airways Group, Inc., American Airlines Group Inc., and US Airways Health Benefit Plan's (collectively, "Defendants") motion for summary judgment. (ECF No. 71.) For the reasons set forth in this order, Defendants' motion is granted.

## BACKGROUND

The factual and procedural background of this case is set forth thoroughly in the Court's prior orders, (1) granting in part and denying in part Defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted, and (2) denying Plaintiff Jennifer Perkins' (hereinafter "Plaintiff") motion to reconsider. (*See* ECF Nos. 36 & 69.) The Court assumes knowledge of that background, incorporates it by specific reference herein, and summarizes here only in relevant part.

Plaintiff is a participant in the US Airways Health Benefit Plan (the "Plan"). The Plan is a welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(d)(1). Defendant US Airways, Inc. ("US

Airways"), was at all relevant times the plan administrator. On May 10, 2000, Plaintiff was struck by lightning while working as a flight attendant for US Airways. Since that time she has suffered from a variety of medical issues related to the lightning strike, which ultimately prevented her from performing her duties as a flight attendant. Plaintiff has been on an approved medical leave of absence from US Airways since October 2001, and has been receiving long-term disability benefits since that time.

The gravamen of this lawsuit, as initially filed, was Plaintiff's challenge of US Airways' denial of certain claims for medical benefits under ERISA, 29 U.S.C. § 1001 *et seq.*, and the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(3)(A), along with her assertion that US Airways failed to adequately explain the reason for the denial, in violation of the procedural requirements of ERISA § 503(2), 29 U.S.C. § 1133(2). The Court granted Defendants' motion to dismiss these claims, and denied Plaintiff's motion to reconsider that ruling. (*See* ECF Nos. 36 & 69.) Plaintiff's only remaining claim is that US Airways violated ERISA by failing to timely provide her with Plan documents pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1). (*See* Compl. ¶¶ 65-73, ECF No. 1.)

On October 18, 2010, Plaintiff submitted a written request, via certified mail return receipt requested, to US Airways for copies of the "Summary Plan Descriptions for US Airways Flight Attendants Health Benefits and Long Term Disability Benefits for years 2010, 2001, and 2000 . . . ." (ECF No. 71-13.) This written request apparently followed several conversations Plaintiff had undertaken with a representative of US Airways, in which it was indicated that the documents related to the Plan would be mailed to Plaintiff, and Plaintiff was informed where they could be found on the

company's "eBenefits" portal (though Plaintiff was unable to locate them there). (*Id.*)

One week later, on October 25, 2010, US Airways sent to Plaintiff, via federal express, copies of various documents related to the Plan, including the 1993 Health Benefits Plan Summary Plan Description ("1993 SPD") and all other materials US Airways determined to be relevant to Plaintiff's request. (ECF No. 71-12 at 5.) Plaintiff acknowledges that she received the Plan materials mailed to her in October 2010, whereupon she wrote down the titles of the documents received, placed them back in the envelope in which they came, and "turned [them] over" to her attorney, Mr. Norris A. Adams, II, Esq. ("Adams"), without "look[ing] at [the 1993 SPD]." (Perkins Dep. 38:18-39:3, 59:22-60:7, ECF No. 71-2 at 10-11, 15-16.)

On November 4, 2010, Plaintiff requested Plan documents again, itemizing various documents she asserted US Airways had not provided in response to her October 18, 2010 letter. She wrote:

> Thank you for the Summary Plan Descriptions you sent October 27, 2010, consisting of the following:
>
> 1) US Air Health Benefit Plan January 1993
> 2) US Airways Long Term Disability Benefit Plan April 1, 2001
> 3) US Airways Health Benefit Plan May 1, 2003
> and (2) 4) US Airways Long Term Benefit Plans Jan. 1, 2004[1]
>
> So far I have only received <u>one</u> Summary Plan that I have requested and that is the Long Term SPD for 2001. I have been requesting these Summary Plans since Sept. 13, 2010.[2] US Airways flight attendant contract changed May 1, 2000, and I would like the Summary Plans that covered that new contract for Health, and Long Term Benefits. I still would like the Summary Plan Descriptions for the following:

---

[1] As will be noted later, Defendants maintain that the plan administrator included a copy of the 2008 Summary Plan Description in this mailing, which conflicts with Plaintiff's hand-written recording of the mailing's contents.

[2] This date reflects Plaintiff's initial conversation with a US Airways representative regarding access to the documents. (*See* ECF No. 71-13 at 2.)

3

> 1) US Airways Health Benefit Plan for May 1, 2000
> 2) US Airways Long Term Disability Plan May 1, 2000
> 3) US Airways Health Benefit Plan for 2001
> 4) US Airways Long Term Disability Plan for 2003*
> 5) US Airways Health Benefit Plan for 2010
> 6) US Airways Long Term Benefit Plan for 2010

*A new request as of November 4, 2010.

(ECF No. 71-10 at 2.) Kimie Shanahan, US Airways Manager Benefits Services responded to Plaintiff's second request on November 8, 2010, stating:

> Dear Jennifer,
>
> First of all let me apologize if I have not been clear in our prior contacts. *The SPD's [sic] and plan documents that I sent to you are the only ones there are.* The fact that your contract may have changed does not mean that the medical plan or the Flight Attendant LTD plan also changed. We do not write new plans simply because the contract has been changed. The Collectively bargained agreements are completely different from the company medical plan or the long term disability plan and very little about either of those plans is actually covered by the Flight Attendant contract.
>
> *I have provided you with everything we have about both the health plan and the Flight Attendant long term disability plan.* If you are looking for something specific that was covered in one or more of the Flight Attendant contracts and you believe it should be included in the LTD plan or the health care plan then it would be helpful for me to know exactly what it is you are trying to find. Let me also say that if there is any way in which the health plan or the LTD plan differs from the Contract, the Contract will always prevail.
>
> Please let me know if you have any further questions.

(ECF No. 71-11 at 2 (emphasis added).)

On January 25, 2011, Adams wrote to US Airways on Plaintiff's behalf, *inter alia*, requesting various documents related to the Plan. (ECF No. 71-9 at 4-6.) In that letter, Adams repeated Plaintiff's assertion that only "the 1993, 2003, and 2004 summary plan descriptions" had been provided to Plaintiff, and "reassert[ed]" Plaintiff's document requests because of US Airways' putative "failure to adequately respond" thereto. (*Id.* at

4

4-5.) In a February 11, 2011 letter addressing Adams' contention that US Airways had improperly refused to provide Plaintiff with copies of Plan documents, Don Pan, US Airways Vice President of Human Resources, stated:

> Pursuant to Ms. Perkins' October 2010 requests, Kimie Shanahan transmitted to Ms. Perkins by federal express on October 25, 2010 copies of the Health Plan's summary plan descriptions dated 1993, 2003 and 2008, as well as the LTD plan's Plan document and current SPD. Ms. Perkins also requested SPDs for 2000, 2001 and 2010, as those dates correspond to new collective bargaining agreements. However, as Ms. Shanahan explained to Ms. Perkins, there are no SPDs with those specific dates; contrary to Ms. Perkins' understanding, the Plan Administrator for the Medical Plan and for the LTD Plan was not required by law to issue a new SPD, and did not issue a new SPD, every time there was a change *to the terms of the flight attendants' collective bargaining agreement with US Airways.* Rather, ERISA requires plan administrators to issue new SPDs every five years if *plan* amendments have been made during the prior five years, and every ten years if no plan amendments were made. ERISA § 104(b)(1). The Plan Administrator for the LTD Plan and the Medical Plan has furnished updated SPDs in accordance with ERISA's requirements. The Flight Attendant Agreement Between US Airways, Inc. and Association of Flight Attendants-CWA, AFL-CIO dated January 10, 2005 to December 31, 2011 is enclosed as requested.

(ECF No. 71-12 at 5-6 (emphasis in original, internal footnote omitted).)

Plaintiff's current ERISA § 502(c)(1) claim focuses on document requests she posed to U.S. Airways in September 2011 and December 2011. On September 30, 2011, Plaintiff penned another letter seeking, *inter alia*, "any medical and vocational records, the relevant group insurances [sic] policies, the relevant Summary Plan Discriptions [sic], [and] all relevant admendments [sic] to Summary Plan Discriptions [sic] . . . ." (ECF No. 1-1 at 2.) Ms. Shanahan responded to this request by way of a December 2, 2011 letter, stating: "With respect to your document request, we have already provided all relevant plan documents, summary plan descriptions and collective bargaining agreements that govern the terms of your medical coverage (please see our

discussion of this topic in the last section of our February 11, 2011 letter)."[3] (ECF No. 1-2 at 2.) On December 13, 2011, Plaintiff wrote yet another letter seeking Plan documents, and referencing Ms. Shanahan's December 2, 2011 letter as follows:

> In your explanation for not sending me documents requested, I understand US Airways sent Mr. Adams all relevant plan documents Feb. 11, 2011. It is my understanding under ERISA that it is my right to also request those documents for myself based on my leave in 2001.[4]
>
> I would appreciate if you could send me the following information: all relevant plan documents that were in your possession at the time US Airways made the decision to name themselves secondary payor of my medical benefits for 2011. All Summary Plan Discriptions [sic] in FULL (my copy and Mr. Adams copy of the 1993 Health Benefit Plan were missing pages 121 thru 125)[5], all relevant admendments [sic] to the Summary Plan Discriptions [sic], and all collective bargaining agreements.

(ECF No. 1-3 at 3.) Next, Plaintiff's current counsel wrote a letter dated January 25, 2012, asserting that US Airways had failed to provide requested Plan documents in response to Plaintiff's September 30, 2011 and December 13, 2011 letters, and stating:

> My client has checked with her previous attorney. While he did have some Plan Documents, he did not have the entire Plan Documents at issue. More specifically, as my client wrote to you on December 13, 2011, the health benefit plan was missing pages 121 through 125, when it was provided to Mr. Adams. Consequently, my client does not have a complete copy of that entire document. We understand the missing pages are the ones that address the primary versus secondary issue. Please provide said Plan Document now in its entirety without further delay.

(ECF No. 1-4 at 2.) Finally, on January 31, 2012, US Airways forwarded a complete

---

[3] A copy of Mr. Pan's February 11, 2011 letter was attached to Ms. Shanahan's December 2, 2011 letter.

[4] In actual fact, all evidence of record indicates that the Plan documents mailed by US Airways in October 2010 were sent to Plaintiff directly, *and not* to Adams. As described *supra*, Plaintiff forwarded the documents to Adams, her attorney at the time, of her own volition. She later recovered the documents from Adams when she went "to his office to get rid of [him]." (Perkins Dep. 61:7-61:13, ECF No. 71-2 at 17.) US Airways' February 11, 2011 letter to Adams apparently included a copy of the 2008 SPD (*see* ECF No. 71-12 at 2; *see also* Compl. ¶ 69, ECF No. 1 at 9), but did not include copies of any other Plan documents for the specific reason that, to the plan administrator's understanding, all relevant documentation had already been provided to Plaintiff personally.

[5] During her deposition, Plaintiff testified that she discovered pages 121 through 125 of the 1993 SPD were missing in April 2011. (Perkins Dep. 58:15-61:18, ECF No. 71-2 at 14-17.) However, Plaintiff's December 13, 2011 letter is the first written communication to US Airways which explains that Plaintiff's copy of the 1993 SPD was incomplete.

copy of the 1993 SPD and the 2008 SPD to Plaintiff's current counsel. (ECF No. 1-5 at 2.)

Defendants filed a motion for summary judgment on August 29, 2016. (ECF No. 71.) Plaintiff filed a response in opposition on September 29, 2016 (ECF No. 75), and Defendants filed their reply on October 11, 2016 (ECF No. 76). The matter is ripe for review, and the Court now issues the following ruling.

## STANDARD OF REVIEW

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of

the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a summary judgment motion. *Anderson*, 477 U.S. at 252. "Genuineness" of the disputed issue(s) "means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## DISCUSSION

**A. Whether Defendants' theory regarding the provision of historical Plan documents constitutes an "unpled defense," not raised in their pre-answer motion to dismiss, and is therefore precluded at summary judgment.**

Plaintiff's response in opposition to the motion for summary judgment begins by

asserting that Defendant's "duty-based argument" regarding the provision of historical Plan documents, such as the 1993 SPD, is actually a Rule 12(b)(6) defense of failure to state a claim cloaked in the language of summary judgment, and that the Court should decline to consider it because Defendants failed to raise such a theory in their pre-answer motion to dismiss. (ECF No. 75 at 12-14.) The Court disagrees. Defendants' arguments regarding their putative obligation to provide certain historical Plan documents are grounded in the applicable substantive law, and go directly to the question of whether Defendants are entitled to judgment as a matter of law under Rule 56(a). Moreover, as Defendants aptly explain in their reply brief, failure to state a claim upon which relief can be granted is not among the defenses that are deemed waived if not raised in a Rule 12 motion or responsive pleading. (*See* ECF No. 76 at 6-8.) Suffice to say, Defendants' arguments are properly before the Court at the summary judgment phase and the Court will consider them.

**B. Whether ERISA required US Airways to give Plaintiff the documents she requested in writing on September 30, 2011, and December 13, 2011, within thirty days of those requests, which US Airways did not do.**

First, a brief housekeeping point: "Only a plan administrator can be held liable under section 1132(c) [ERISA § 502(c)] . . . ." *VanderKlok v. Provident Life & Acc. Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992); *accord Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1088 (8th Cir. 2009) (affirming dismissal of § 502(c) claim against claims administrator "because § 1132(c) only provides a cause of action against plan administrators"); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996) ("Under ERISA § 502(c)(1), a district court may, in its discretion, assess penalties of up to [$110] a day against *plan administrators* who fail to furnish requested documents that

are required to be furnished by § 104(b)(4)." (emphasis added)). As noted above, US Airways, Inc. was the plan administrator at all times relevant to the case. Plaintiff has conceded this point. (*See* ECF No. 75 at 14 n.3.) Accordingly, Defendants U.S. Airways Group, American Airlines Group, and US Airways Health Benefit Plan are entitled to summary judgment, which the Court now grants. For the remainder of this order, the Court will address the § 502(c) claim as it pertains to US Airways, Inc. only.

### (1) Whether the factual dispute regarding the 1993 SPD is material and genuine.

"ERISA requires [a plan] administrator 'upon written request of any participant or beneficiary, [to] furnish a copy of the latest updated summary plan description, plan description . . . contract, or other instruments under which the plan is established or operated.'" *Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 544 (4th Cir. 1992) (quoting ERISA §104(b)(4), 29 U.S.C. § 1024(b)(4)). ERISA § 502(c) states, in pertinent part:

> Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110][6] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, . . . each violation described in subparagraph B with respect to any single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C. § 1132(c)(1). Pursuant to its plain meaning, § 502(c) vests the Court with discretion to determine the amount of the monetary penalty to be imposed upon a plan administrator for failure to mail plan materials, if any, up to $110 per day. *See id.*

US Airways first argues that Plaintiff has produced no evidence demonstrating

_____

[6] 29 C.F.R. § 2575.502c-1 (increasing the per diem penalty from $100 to $110).

that US Airways failed to comply with the requirements of ERISA § 104(b)(4). Rather, US Airways avers, the record confirms that the plan administrator, in October 2010, timely provided Plaintiff with all of the Plan materials she requested, other than those that did not exist (e.g. the supposed 2000 Health Benefit Plan SPD), which the plan administrator axiomatically could not have had a duty to provide. (*See* ECF No. 71-1 at 13-18.)

Plaintiff maintains that there is a material factual dispute regarding whether the copy of the 1993 SPD that US Airways provided to Plaintiff in October 2010 was incomplete, or whether Adams may have misplaced pages 121 through 125, which were apparently missing when Plaintiff recovered the document from Adams in April 2011. (ECF No. 75 at 8-10.) However, Plaintiff has produced no evidence that these pages were missing when she received the document in the first place, and thus, has not substantively rebutted US Airways' contention that the 1993 SPD was mailed in its entirety at that time. It is undisputed that the 1993 SPD was mailed to Plaintiff within the 30-day statutory window from her original request, and that she received that mailing. Plaintiff testified that she removed the documents from the mailing envelope, copied down the titles, and placed them back into the envelope for transmission to Adams without looking through them. (*See* Perkins Dep. 38:18-39:3, 59:22-60:7, ECF No. 71-2 at 10-11, 15-16).

Plaintiff's assertion that the 1993 SPD was missing the itemized pages in October 2010 is nothing but bare speculation and will not suffice to preclude the entry of summary judgment. This is to say nothing of the fact that she did not notify US Airways of the missing pages until her December 13, 2011 letter, allowing fourteen months and

multiple written requests for the same Plan documents to elapse in between. Attorney Adams, in his correspondence to US Airways on Plaintiff's behalf, said nothing about pages 121 through 125 being missing. (*See* Adams Jan. 25, 2011 Letter, ECF No. 71-9.) A failure to address the lack of these pages, if such a lack existed, would defy reason because the putatively missing section addresses the primary versus secondary payor issue (*see* Shutt Jan. 25, 2012 Letter, ECF No. 1-4 at 2), which issue constituted the gravamen of Plaintiff's contention that US Airways wrongfully denied her medical benefits in the first instance.

In short, the dispute about missing pages would not "create fair doubt" in the mind of the fact finder, and therefore is not "genuine." *See Ross*, 759 F.2d at 364. Even construing all inferences in Plaintiff's favor, as the Court must at the summary judgment stage, the Court finds a lack of "genuineness" here, because such inferences must be based in *evidence* and Plaintiff has offered none. *See Diebold*, 369 U.S. 654 at 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts *contained in [affidavits, exhibits, and depositions]* must be viewed in the light most favorable to the party opposing the motion." (emphasis added)). Accordingly, the Court finds that there is no genuine issue of material fact regarding the completeness of the 1993 SPD as originally mailed to and received by Plaintiff, and US Airways is entitled to summary judgment.[7]

---

[7] The foregoing analysis suspends the corollary question of whether US Airways had an obligation to provide historical SPDs in response to an ERISA document request. A plain reading of the statutory language, and straightforward interpretation of the relevant case law, both suggest that a plan administrator's obligation is limited to providing a copy of the "latest" version of an SPD. *See* ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4); *Lopriore v. Raleigh Cardiovascular & Thoracic, Inc.*, 28 F. App'x 284, 288 n.3 (4th Cir. 2002) (per curiam) (§ 104(b)(4) requires a plan administrator to provide "a copy of the latest updated summary plan description"); *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 225-26 (4th Cir. 1998) ("[Section 104(b)(4)] provides that a plan administrator 'shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description . . . .'").

### (2) Whether the factual dispute regarding the 2008 SPD is material and genuine.

Plaintiff asserts that an issue of fact remains with respect to *when* US Airways provided the 2008 SPD to Plaintiff. (ECF No. 75 at 10.) Plaintiff points to her November 4, 2010 letter, in which she listed the documents received in response to her October 18 request, noted her belief that she had not received all the documents to which she was entitled, and identified the SPDs she was still seeking (among which were documents that have never existed). (*See* ECF No. 71-10 at 2; *see also* Schneider Decl. ¶¶ 7-8, ECF No. 71-14 at 3 ("There is no record of any SPD for the US Airways, Inc. Health Benefit Plan dated 2000, 2001, or 2010. There is no record of any SPD for the US Airways, Inc. Flight Attendant Long Term Disability Benefit Plan dated 2000, 2003, or 2010.").) Specifically, Plaintiff observes that the list of documents she recorded in her November 4 letter as having been received does not match the list of documents US Airways asserted in its February 11, 2011 letter as having been sent. (*Compare* ECF No. 71-10 at 2 (listing the documents received, and excluding the 2008 SPD), *with* ECF No. 71-12 at 5 (listing the 1993 SPD, 2003 SPD, 2008 SPD, and LTD Plan as sent).) In her deposition, Plaintiff testified that the first time she saw the 2008 SPD was in February 2012, after her current attorney reiterated her September 2011 and December 2011 requests for copies of the Plan documents on January 25, 2012. (Perkins Dep. 22:21-23:23, ECF No. 75-2 at 23-24.)

The Court fully understands Plaintiff's contentions on this point, but disagrees that the dispute she cites is sufficient to prevent the entry of summary judgment. First, there is ample evidence in the record indicating that US Airways provided the 2008 SPD to Plaintiff and/or her attorney at least once, if not twice, prior to Plaintiff's September

2011 renewed blanket request for all "relevant" documents. In his February 11, 2011 letter to Attorney Adams, Don Pan, US Airways Vice President of Human Resources, specifically delineates the 2008 SPD as having been sent by Ms. Shanahan in the original October 25, 2010 mailing via federal express. (ECF No. 71-12 at 5.) In addition, Mr. Pan apparently enclosed copies of the then current Plan documents, which would have included the 2008 SPD, in the February 11 letter itself, in support of certain benefits determinations he sought to substantiate in that letter. (*See id.* at 2.) Finally, Mr. Pan specifically explained why US Airways had not complied with Plaintiff's itemized requests for SPDs dated 2000, 2001, and 2010—to wit, no such documents existed. (*Id.* at 5-6.) It is significant that neither Plaintiff, nor Attorney Adams contacted US Airways in the immediate wake of Mr. Pan's letter to say, in effect, "The 2008 SPD you represent that you have provided twice now, you actually forgot to attach it to your correspondence both times." Rather, Plaintiff's next communication with US Airways is the September 2011 blanket request for documents that, according to repeated, contemporaneous representations by US Airways, had already been provided to her.

It is not lost on the Court that the 2008 SPD is absent from Plaintiff's handwritten list, in her November 4, 2010 letter, of documents received (*see* ECF No. 71-10 at 2). Neither has the Court overlooked Plaintiff's deposition testimony that she never saw the 2008 SPD until February 2012 (*see* ECF No. 75-2 at 23-24). Nevertheless, the Court finds that the Plaintiff's dispute over whether the 2008 SPD was mailed to her in 2010 is not a "genuine" issue, such that the evidence she would offer on this point might cause a reasonable jury to return a verdict in her favor. *See Anderson*, 477 U.S. at 248.

Plaintiff described her mindset at the time she received US Airways' initial

response to her October 2010 document request as follows:

> A. 2010, I did receive documents. I was requesting a specific document of the 2000 contract, thinking it would be a 2000 Summary Plan Description.
> I do believe four documents were sent to me. I wrote the names of those documents down and then gave that information to my attorney, just turned it over to my attorney, because I did not believe the information that was sent to me pertained to my particular date of injury.
> Q. So in response to that fall 2010 request, what specifically was missing that you had asked for?
> A. I was looking for a summary plan that went – we had just did a new contract, a union contract – for 2000, May 10th of 2000, and I was looking for a summary plan that would cover that contract.
> Q. And did you specifically ask for that document in your fall 2010 request?
> A. Yes, I did. To my knowledge, I did.

(Perkins Dep. 27:21-28:16, ECF No. 75-2 at 28-29.) Throughout her deposition, Plaintiff

repeatedly makes clear that during the whole course of her correspondence with US

Airways she was seeking a SPD dated in the year 2000, which she believed to exist and

to be applicable to her situation; for example:

> Q. Do you recall what specific documents U.S. Airways provided you in October of 2010?
> A. No, I do not.
> Q. Do you have any reason to believe you didn't receive the documents that you requested in October of 2010 with that package of materials on October 25th, 2010?
> . . . .
> THE WITNESS: Like I said before, I was covered under and went out under the May 2000 contract, union contract.
> I was looking for an SPD of 2000 to cover that contract, and so that's what I was looking for.
> And in those documents, I did not believe that I was sent what U.S. Airways was supposed to have sent me.
> Q. After you received some of those materials in October 2010 – you said you got some but not all of the documents you requested in October 2010 – did you tell anyone at U.S. Airways that you thought some documents you had requested were missing?
> A. I do not have any idea. I would have to check in my records.

(Perkins Dep. 39:12-40:12.) It is possible that Ms. Perkins simply copied the titles of the

documents she was provided in October 2010 incorrectly, perhaps because none of them displayed the "2000" date she was looking for. But the Court has been presented with no substantive evidence of such a scrivener's error, and need not speculate on the point. In any event, it is abundantly clear that Ms. Perkins took no notice whatsoever of the documents' actual contents, but simply forwarded them to her attorney for his review.

Plaintiff is not capable of offering any assistance on the question of whether the 2008 SPD was in fact attached to Mr. Pan's February 11, 2011 letter, but she certainly cannot refute it:

> Q. And as you understand it, what requested documents did U.S. Airways not provide with its February 11th, 2011 letter?
> A. I have no idea. All I received from U.S. Airways was the letter itself. I never received any documents. Those went to Counsel.
> When I left that Counsel, I requested all documents, and that is when I discovered missing pages.
> I requested – I asked Counsel and they could not find those pages.

(Perkins Dep. 29:11-29:21.) Her deposition testimony seems to represent that when she went to Attorney Adams' office to terminate their attorney-client relationship and retrieve her documents, the only Plan document she received was an incomplete copy of the 1993 SPD:

> Q. Why did you write the letter dated September 30th . . . yourself, rather than asking Mr. Adams to write it?
> A. Because, as I had let Mr. Adams go in May, and I had requested all documentation from Mr. Adams pertaining to my file, and the only thing that I was given was the 1993 summary plan, and four pages were missing, four or five pages were missing from that summary plan, and I was wanting the full and complete administrative record.
> Q. Do you see in your letter from September 30th where it says, I want to make certain that I have all of the documents required under ERISA –
> A. Yes.
> Q. – the beginning of that second paragraph?

16

> A. Yes.
>
> Q. Why did you want to make certain you had all of the plan documents?
>
> A. Because he did not –
>
> I do not know for a fact if he had them, but what he gave me – he did not have the full Summary Plan Description to provide me, so I just felt that he was not given the full summary plan, and I wanted everything provided to me based on my 2000 contract.
>
> Q. Okay. And, again, when you're referring to the summary plan, we're talking about the 1993 summary plan document; is that right?
>
> A. Well, I was – in reference to my union contract of 2000, I was wanting anything administrative, summary plan, that pertained to my union contract of May 2000.

(Perkins Dep. 46:23-48:6.) When questioned further about what documents she specifically believed she was missing, Plaintiff only references the five missing pages of the 1993 SPD again. (Perkins Dep. 48:7-48:20.) Indeed, a straightforward reading of Plaintiff's cause of action regarding US Airways' alleged failure to provide Plan documents seems to indicate that her claim was, from the beginning, entirely premised upon the missing pages of the 1993 SPD, and had nothing to do with the 2008 SPD. (*See* Compl. ¶¶ 69-71, ECF No. 1 at 9.)

The Court need not descend any further into the minutiae of the various mailings at issue. No party or person can reconstruct the actual contents of the October 25, 2010 and February 11, 2011 envelopes, sent to Plaintiff and her initial counsel respectively, any further than what has already been done. A trial would not assist such an effort in the slightest. US Airways has offered competent evidence to show that it timely provided the 2008 SPD as required by ERISA. The movant having therefore shown that summary judgment is appropriate, the burden shifted to Plaintiff to set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322-23. Plaintiff's November 4, 2010 letter and deposition testimony are a far cry from

disproving that US Airways mailed the 2008 SPD as indicated. "[A] mere scintilla of supporting evidence is not enough to defeat a summary judgment motion." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999), *aff'd*, 213 F.3d 632 (4th Cir. 2000). Instead, "[t]he non-moving party must identify sufficient evidence that reasonable jurors could find by a preponderance of the evidence." *Id.*; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). A party opposing summary judgment, moreover, is entitled only to those inferences from the evidence that are "within the range of reasonable probability." *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (quotation omitted). "Whether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary." *Id.* (quotation omitted). The Court finds that the inferences on which Plaintiff's version of the facts depends are outside "the range of reasonable probability" in light of US Airways' competing evidence.  Accordingly, there is no genuine issue of material fact regarding *when* US Airways provided the 2008 SPD to Plaintiff, and US Airways is entitled to summary judgment.

### (3) Whether US Airways failure to provide Plan documents within thirty days of Plaintiff's September 30, 2011 and December 13, 2011 requests constituted ERISA § 502(c)(1) violations.

In the end, Plaintiff avers that US Airways' arguments regarding its compliance with Plaintiff's "initial" written request for Plan documents in October 2010 are immaterial to its purported violations of ERISA § 502(c)(1) by failing to provide Plan documents within thirty days of Plaintiff's September and December 2011 requests. (ECF No. 75 at 19.) She argues that her § 502(c)(1) claim, as stated in the complaint, is

based entirely on her September 30, 2011 and December 13, 2011 requests (*see* Compl. ¶¶ 65-73, ECF No. 1 at 9-10), and therefore, even if US Airways provided her with the 1993 SPD and 2008 SPD in October 2010 as it claims, its failure to respond in a timely manner to her subsequent requests constitute independent violations of ERISA. (*See* ECF No. 75 at 18-21.)

For purposes of analyzing this question, the Court will give Plaintiff the benefit of the assumption that ERISA § 104(b)(4) required US Airways to provide historical Plan documents (specifically, the 1993 SPD), though such a duty almost certainly never existed in the first instance since such historical documents were not operative, not the "latest" version of the SPD, and not expressly relied upon by a claims administrator in the denial of benefits to Plaintiff. *See supra*, at 12 n.7; *see also Hartman v. Dana Holding Corp.*, 978 F. Supp. 2d 957, 968 (N.D. Ind. 2013) ("[O]utdated documents are generally not required to be provided because they are normally not necessary to determine one's rights under the current plan."); *Murphy v. Int'l Painters & Allied Trades Industry Pension Fund*, No. 3:13-CV-28760, 2015 WL 5722809, at *8 (S.D.W. Va. Sept. 29, 2015) ("ERISA simply does not require plan administrators to provide out of date versions of a plan.") (citing 29 U.S.C. § 1024 and *Faircloth*, 91 F.3d at 654 (refusing to interpret § 1024 broadly)).

Simply put, Plaintiff's theory that US Airways' failure to timely produce Plan documents in response to her September and December 2011 requests constitute independent § 502(c)(1) violations rests on the faulty premise that ERISA requires plan administrators to provide participants with copies of the same plan documents over and over again, regardless of how many times a participant has already requested and

received those documents, and regardless of whether the participant's subsequent requests specifically identify the documents needed or explain the purported need for repeat copies. (*See* ECF Nos. 75 at 18-21; 71-5; 71-6.) Plaintiff cites no authority endorsing this premise. This is an untenable reading of §§ 104(b)(4) and 502(c)(1), and one in which the Court declines to engage.

The Court need not repeat here every instance in which Plaintiff, either alone or through counsel, requested the Plan documents, and every instance in which she was correspondingly told in good faith by US Airways personnel that she had already received all documents relevant to her requests. Ultimately, when Plaintiff identified in her December 13, 2011 letter a specific problem regarding the documents she possessed—the five missing pages from the 1993 SPD—US Airways provided her a new copy. Suffice it to say, Plaintiff has not demonstrated that any genuine issue of material fact remains regarding US Airways' responses to her September and December 2011 requests. The Court finds that those responses were entirely reasonable, that US Airways' failure(s) to provide repeat copies of the same Plan documents within thirty days was(were) not a § 502(c)(1) violation(s), and that US Airways is entitled to judgment as a matter of law.

**C. Assuming *arguendo* that US Airways failed to comply with its obligation to provide documents under ERISA, whether a monetary penalty would be appropriate.**

Even if US Airways somehow failed to comply with its obligation to provide Plan documents to Plaintiff under ERISA § 104(b)(4), the Court finds that no monetary penalty would be appropriate on the record in this case. In the Fourth Circuit, "Two factors guide a district court's discretion in determining whether to impose penalties under section 1132: prejudice to the plaintiff and the administrator's conduct in

responding to the request for information." *Sedlack*, 134 F.3d at 226.

There is no evidence in the record that any putative failure to provide copies of Plan documents prejudiced Plaintiff. In an attempt to demonstrate prejudice, Plaintiff argues, "Defendants did not provide Plaintiff with the copies of documents she requested in advance of her administrative appeals." (ECF No. 75 at 26.) But the September and December 2011 document requests, which Plaintiff explicitly avers are the basis of her § 502(c)(1) claim, were both submitted *after* she "timely appealed . . . on July 26, 2011 . . . ." (Compl. ¶ 42, ECF No. 1 at 5.) Plaintiff appealed a second time on December 15, 2011 (*see id.*), just after having been reassured that the documents previously provided to her and to her first attorney were all that were applicable to her situation (*see* Shanahan Dec. 2, 2011 Letter, ECF No. 1-2 at 2). US Airways subsequently mailed copies of the 1993 SPD and 2008 SPD to Plaintiff and her new counsel on January 31, 2011, in response to counsel's letter of January 25, 2011. (ECF No. 1-5 at 2.) Plaintiff's arguments regarding prejudice artificially ignore the October 25, 2010 and February 11, 2011 mailings altogether, and in any event fail to explain any concrete harm she purportedly suffered.[8]

With regard to the conduct of the plan administrator, there is no hint of any bad faith. As early as November 8, 2010, after Plaintiff requested a whole slew of Plan

---

[8] The Court would take a brief moment to put all these matters in perspective. It is beyond dispute that Plaintiff was personally provided with a copy of the 2003 SPD in the October 25, 2010 mailing. (*See* Plf. Nov. 4, 2010 Letter, ECF No. 71-10 at 2 (acknowledging receipt).) As the Court explained in its September 30, 2015 order granting in part and denying in part Defendants' motion to dismiss, the portion of the Plan addressing the primary versus secondary payor issue (section 4.5), as amended in 2003, contained only immaterial alterations from previous versions and dictated the same result on Plaintiff's central claim regarding the denial of benefits. (*See* ECF No. 36 at 12; *see also* Ex. B, Mot. to Dismiss, ECF No. 24-4 at 51, 55 (2003 Amendments).) Thus, even if Plaintiff and her initial counsel never received the 1993 SPD and the 2008 SPD in October 2010 and February 2011, they were indisputably in receipt of a Plan document that governed the relevant issue with exactly the same effect. Under these facts, Plaintiff has not, and cannot, demonstrate prejudice.

documents that never existed (*see* ECF No. 71-10 at 2), Ms. Shanahan endeavored to explain to Plaintiff that the documents she initially mailed were the only ones applicable to Plaintiff's request, and stated, "If you are looking for something specific that was covered in one or more of the Flight Attendant contracts and you believe it should be included in the LTD plan or the health care plan then it would helpful for me to know exactly what it is you are trying to find." (ECF No. 71-11 at 2.) As already mentioned, once Plaintiff specifically informed US Airways of the pages she was missing from the 1993 SPD, Ms. Shanahan provided a new copy, along with a new copy of the 2008 SPD. (ECF No. 1-5 at 2.) While it is true that this response (January 31, 2012) came forty-nine days after Plaintiff's December 13, 2011 letter, rather than thirty, this is not the type of delay that would, in the Court's view, warrant a penalty, particularly given the totality of US Airways' interactions with Plaintiff and general timeliness in responding to her communications.

Accordingly, even if Plaintiff had been able to demonstrate a genuine issue of material fact regarding US Airways' putative failure to meet its obligation to provide Plan documents, the Court would find that no monetary penalty should be imposed.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

<u>/s/ Bruce Howe Hendricks</u>
United States District Judge

March 31, 2017
Greenville, South Carolina